THE JOHN H. STARIN (two cases).

THE JAMAICA.

(District Court, S. D. New York. April 3. 1906.)

1. COLLISIONS—STEAM VESSELS CROSSING—VIOLATION OF RULES.

A collision occurred in the East river in the daytime between the steamer Starin passing down and the ferryboat Jamaica crossing from the Brooklyn side and as a result the Starin was forced against and

injured a barge lying in a slip on the Manhattan side. Each vessel gave and persisted in signals announcing its intention of crossing ahead of the other, and the Starin, at the time of her first signal, ported her wheel, and again later so that the collision occurred within about 100 feet of the Manhattan docks. *Held,* that both vessels were in fault for persisting in such intention, the Jamaica also for violation of articles 19, 22 and 23 of the inland navigation rules of June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883], which required her as the vessel having the other on her own starboard side to keep out of the way, to avoid crossing ahead and to slacken her speed or stop, and the Starin for violation of article 21, which required her to keep her course and speed, and that both were liable for the resulting injury to libelant's barge.

2. SAME—INSISTENCE ON RIGHT OF WAY.

There is no right of way on which a vessel is entitled to insist when it is obvious that it will result in danger of a collision.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 17.]

In Admiralty. Suit for collision.

Hyland & Zabriskie, for McLain.

James J. Macklin, for the Starin.

Wheeler, Cortis & Haight and Clarence B. Smith, for the Jamaica.

ADAMS, District Judge. This action was brought by Bernard McLain, the owner of the barge Bernard McLain, Jr., against the steamboat John H. Starin to recover the damages suffered through collision between those vessels in the afternoon of the 13th day of February, 1905. The McLain was lying, outside of 2 other boats, on the upper side of pier 61, about 20 feet from the end. The Starin was proceeding down the river, bound for the foot of Cortlandt Street, Manhattan, and changed towards Manhattan to avoid the ferryboat Jamaica, which was bound from her slip at the foot of Grand Street, Brooklyn, to her slip just north of pier 61, Manhattan. The claimant of the Starin brought in the Jamaica by petition. The tide was ebb, the current running about 1½ miles per hour. The weather was clear.

The Starin was proceeding, at the rate of 8 miles, to the eastward of the 10th Street buoy and just after passing it, saw the Jamaica emerging from her slip at the foot of Grand Street, and claims that she, the Starin, then near the buoy, blew a signal of 1 whistle to the Jamaica; that the latter did not reply, and the Starin repeated the signal, still without eliciting a reply; that on blowing the 2d signal the Starin ported her helm; that after a short time, she blew another signal of 1 blast and ported her helm still more; that to this signal she received a reply of 2 blasts from the ferryboat; that the Starin then having reached a point about off Houston Street, blew another signal of 1 blast, put her helm further to port and rang bells to stop and reverse, the vessels then being about 300 feet apart; that the ferryboat kept on and, with her starboard side, struck the Starin a heavy blow on her port bow, doing considerable damage to the steamer; that the collision took place off about pier 61, and about 100 feet off the Manhattan shore; that the force of the blow turned the Starin around to the starboard so that she struck the McLain,

lying at the pier; that the Jamaica at the time of the collision was heading nearly directly across the river and still going ahead; that the Jamaica kept her full speed of 8 miles an hour (having rung a jingle bell after she had crossed the middle of the river) until the collision and after the collision she rang bells to reverse; that when the jingle bell was rung by the Jamica, the Starin was in the vicinity of 3rd Street and the former had crossed the middle of the river; that the pilot of the Jamaica saw the Starin plainly off the 10th Street buoy before the Jamaica emerged from her slip and all the time the Starin was going to the starboard; that the pilot of the Jamaica knew that the repeated signal of 1 blast given by the Starin meant that she would continue to cross the bow of the Jamaica and she had notice enough of such intention; that the usual course of steamers coming down the river is to bend around after passing the buoy under a port helm; that the course inclines towards the Manhattan shore; that the Starin headed a little more that way on account of the Jamaica. The contention of the Starin is that the Jamaica was solely in fault for the collision because she did not obey articles 19, 22 and 23 of the Navigation Rules. Act June 7, 1897, c. 4, 30 Stat. 101 [U. S. Comp. St. 1901, p. 2883]. They provide as follows:

"Art. 19. When two steam-vessels are crossing, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other.

Art. 22. Every vessel which is directed by these rules to keep out of the way of another vessel shall, if the circumstances of the case admit, avoid crossing ahead of the other.

Art. 23. Every steam-vessel which is directed by these rules to keep out of the way of another vessel shall, on approaching her, if necessary, slacken her speed or stop or reverse."

The Jamaica contends that when the Starin had reached a point east of the 10th Street buoy, and was probably 500 to 600 feet from the Brooklyn shore, the Jamaica was ⅓ to ½ out of her slip; that a signal of 2 blasts was blown by her to the Starin, which was crossed by a signal of 1 blast from the Starin; that the Jamaica continued to repeat her signal of 2 blasts, which in every case was crossed by the Starin; that after the Jamaica had blown a 2 blast signal twice, seeing the Starin was swinging towards the Manhattan shore, the Jamaica blew alarm whistles, followed by a signal of 2 blasts to signify her insistence upon her course; that those signals were repeated several times by the Jamaica and every time crossed by the Starin; that both of the vessels were making about 8 miles per hour over the land; that the Jamaica as she came out of her slip was under a port helm one turn, which prevented her sagging against the Brooklyn wharves, in which direction she was forced by the tide; that her course was down and across the river, but seeing the Starin heading towards Manhattan, the Jamaica allowed her wheel to run, and later starboarded a little, so that she might swing further down the river out of the way of the Starin; that this change was made about in the middle of the river, but she continued her general course towards Manhattan, and when as close to it as she could safely go, she ported and came up near the wharves towards her slip, so that it was then

impossible for the Starin to pass ahead of her; that the Starin, starting near the 10th Street buoy under a port helm, swung at first slowly to the starboard, then with increasing speed, following the Jamaica, finally colliding with her about 100 feet off pier 61; that the Jamaica was then headed about N. N. W. and angling towards the Manhattan wharves and the Starin directly across the river; that the Starin was an overtaking vessel and should have slackened her speed and permitted the Jamaica to pass ahead instead of following her around; that the first navigation signal was given by the Jamaica, the burdened vessel; that she was entitled under Pilot Rule 2, which directs that such vessel shall indicate by "two blasts, her intention of directing her course to port, which signals must be promptly answered by the steamer having the right of way"; that this rule expressly gives the burdened vessel the right to decide whether she will avoid collision by passing ahead or astern of the vessel on her starboard hand; that it was perfectly safe for the Jamaica to cross in front of the Starin; that a line drawn between the two ferry slips, will intersect the course of the Starin at a point 1,950 feet from the 10th Street buoy and 600 feet from the stern of the Jamaica in her position half way out of her slip and taking the effect of the tide into consideration, the Jamaica would have to go 700 feet only, while the Starin was going 2,175; that thus the Jamaica had to go less one-third as far as the Starin; that the testimony of impartial witnesses shows that the Starin by maintaining her course and speed would have passed safely astern of the Jamaica; that the Jamaica, as the burdened vessel, indicated a safe method of avoiding the Starin and had the right to determine it under Rule 2; that it was the right and duty of the Jamaica to indicate the course she should pursue and there was no occasion for the Starin to do otherwise and a single blast from her merely meant that she intended to keep her course and speed; that her signal was entirely unnecessary and only likely to lead to complications and it is improbable that she gave it.

It is urged by the Jamaica that the duties of the respective vessels are determined by articles 19, 21 and 22 (19 and 22 have been quoted above) 21 provides:

"Art. 21. Where, by any of these rules, one of the two vessels is to keep out of the way, the other shall keep her course and speed."

Pilot Rule No. 2 is also cited by the Jamaica. It reads as follows:

"Rule II. When steamers are approaching each other in an oblique direction, as shown in the diagrams of the fourth and fifth situations, so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other, which latter vessel shall keep her course and speed; the steamer vessel having the other on her starboard side indicating by one blast of her whistle her intention to direct her course to starboard, so as to cross the stern of the other steamer; and two blasts, her intention of directing her course to port, which signals must be promptly answered by the steamer having the right of way, but the giving and answering signals by a vessel required to keep her course shall not vary the duties and obligations of the respective vessels."

It is further contended by the Jamaica that she expected the Starin to keep her course and speed and did not wish any change to be

made; that if the rule had been observed on the Starin's part there would have been no collision.

It appears that the Starin was coming down the river at the rate of about 8 miles an hour, as aided by the tide, and that the Jamaica could have made her trip across at about the same general rate of speed. If the latter could have gone directly across, it is probable that there would have been ample time for her to have crossed the Starin's bow in safety, but the Jamaica could not get under full headway immediately and the tide carried her down, so that before the intersecting point could be reached she traversed considerably more than the direct distance, and some of the time, at a slower rate of speed than when under full headway. I think she should not have attempted under the circumstances to go ahead, especially as she observed that the Starin was not keeping a straight course down the river but going towards Manhattan, from the beginning under a port helm. The Jamica violated Articles 22 and 23 and should be condemned for endeavoring to pass ahead.

The Starin's duty under the starboard hand rule, was to keep her course and speed but she failed altogether in the former respect in changing constantly to the starboard and by the time the vessels came together, she was very near the Manhattan side.

This is a case where a collision was brought about, not only with danger to the vessels themselves and the people on board, but also to a third party's boat lying motionless at a wharf in a supposedly safe place, through the persistent effort on the part of each vessel to pass ahead of the other. Each fancied she had the right of way, but there is no such right when it is obvious that if adhered to, it will result in danger of a collision.

There will be a decree for McLain against both of the defending vessels, and they will each have a decree against the other for half damages. Orders of reference will accompany the decrees.